

**FILED**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

JUL 13 2026

JEFFREY P. COLWELL
CLERK

**\*\*IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLORADO\*\***

Civil Action No. _____

**DR. GARY W. FOSTER; MRS. COLLEEN G. FOSTER, individually and on behalf of daughter; and WALTER A. MUNYER, Personal Representative of the Estate of Cailin Renee Foster,** Plaintiffs,

v.

**UNITED STATES OF AMERICA,** Defendant.

**COMPLAINT FOR DAMAGES UNDER THE FEDERAL TORT CLAIMS ACT**

Plaintiffs Dr. Gary W. Foster, Mrs. Colleen G. Foster, and Walter A. Munyer, Personal Representative of the Estate of Cailin Renee Foster, allege as follows:

## I. INTRODUCTION

1. This civil action is brought pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671–2680.
2. Plaintiffs seek damages for wrongful death, medical malpractice, and independent civilian torts.
3. This action arises from systemic negligence, regulatory violations, and failures in clinical and administrative safeguards at the United States Air Force Academy ("USAFA") in El Paso County, Colorado.
4. These failures directly caused the severe psychological trauma and preventable death of 2d Lt Cailin Renee Foster (USAFA Class of 2021).

## II. JURISDICTION AND VENUE

5. This Court has jurisdiction under 28 U.S.C. § 1346(b)(1) and 28 U.S.C. § 1331.
6. Venue is proper under 28 U.S.C. § 1402(b) because the acts and omissions occurred at USAFA in El Paso County, Colorado, and Plaintiffs Gary and Colleen Foster reside in this District.

## III. EXHAUSTION OF ADMINISTRATIVE REMEDIES

7. Plaintiffs timely filed administrative claims (SF-95) with the Department of the Air Force within the two-year period required by 28 U.S.C. § 2401(b), as shown in Exhibit A.
8. The claims were assigned Nos. 25-367485, 25-367486, and 25-367488.
9. The Air Force issued written denials on June 6, 2025, as shown in Exhibit A.
10. Plaintiffs submitted a Request for Reconsideration pursuant to 28 C.F.R. § 14.9(b) on December 03, 2025, as shown in Exhibit B.

11. The agency issued a final denial on January 15, 2026, as shown in Exhibit B.
12. Plaintiffs' claim exhibits are true and correct copies.
13. Plaintiffs have satisfied all conditions precedent under 28 U.S.C. § 2675(a).

## IV. PARTIES

14. Plaintiffs Dr. Gary W. Foster and Mrs. Colleen G. Foster reside in Monument, Colorado.
15. They are the surviving parents of 2d Lt Cailin Renee Foster.
16. Dr. Gary W. Foster is a retired Lieutenant Colonel, United States Air Force (USAF). He is a 1990 graduate of the United States Air Force Academy ("USAFA") and served there during the 2003 Agenda for Change as a Squadron Commander; Chief, Standardization, Policy, Evaluation and Disenrollment; and Mathematics Professor.
17. Dr. Foster wrote cadet wing policy, ran the disenrollment and Cadet At-Risk List ("CARL") processes, maintained the CARL list, wrote placement and removal letters, coordinated support meetings, and drafted Congressional inquiry responses.
18. In 1987–1988, then-Cadet Gary W. Foster (Class of 1990) served with the now-current USAFA Superintendent, Lieutenant General Tony D. Baurenfiend (Class of 1991), in Cadet Squadron 13.
19. In 1989, then-Cadet Gary W. Foster worked in the same Air Force Research Laboratory at Wright-Patterson Air Force Base, Ohio, where 2d Lt Cailin R. Foster was later assigned for her first duty station.
20. In 2003, then-Major Gary W. Foster served as the first-line commander for the now-current USAFA Dean of Faculty, Brigadier General James Valpiani (Class of 2004), in Cadet Squadron 22.
21. Dr. Foster also served in the active-duty USAF as a Behavioral Scientist.
22. Plaintiff Walter A. Munyer resides in Grove City, Ohio.
23. He is the duly appointed Personal Representative of the Estate of Cailin Renee Foster, as documented in Exhibit C dated December 13, 2021.
24. Defendant is the United States of America, liable under the Federal Tort Claims Act for the acts and omissions of USAFA personnel and other Air Force personnel acting within the scope of federal employment.

## V. FACTUAL ALLEGATIONS

25. USAFA personnel owed mandatory, non-discretionary duties to protect, monitor, and clinically track cadets experiencing acute psychological distress.
26. USAFA leadership rolled back sexual-assault safeguards established by the Fowler Commission and the 2003 Agenda for Change.
27. The 2003 Agenda for Change identified multiple systemic failures that USAFA has not corrected and, in many cases, has reverted back to.
28. The 2003 Agenda for Change found: "The evidence demonstrated confusion among Academy personnel concerning commander-directed mental health evaluations."
29. The 2003 Agenda for Change required: "The Commandant will establish a 24/7 dormitory security and monitoring system. An officer will be on duty at all times in the dormitories. This duty officer will be responsible for the good order and discipline, and will manage roving patrol in effect at night and on weekends."

30. The 2003 Agenda for Change required: "Any cadet found to provide, purchase for, or sell alcohol to an underage cadet will be disenrolled immediately."

31. The 2003 Agenda for Change required: "All allegations of sexual assault will be reported to the chain of command immediately."

32. The 2003 Agenda for Change identified: "The lack of amnesty or misunderstanding of the amnesty program" as a continuing barrier to reporting sexual assault.

33. The 2003 Agenda for Change found: "Concerning the handling of sexual-assault cases at the USAFA, there exists a lack of training for Chaplains to perform victims of sexual assault."

34. The 2003 Agenda for Change found: "The Air Force General Counsel has stated the Academy's interpretation of the Privacy Act may have been narrower than the law would allow."

35. The 2003 Agenda for Change found: "Personnel at the Academy were asked to provide all records associated with complainants... Investigating Officers experienced considerable difficulty reconstructing individual cadet administrative or cadet disciplinary actions."

36. USAFA has not corrected these failures and continues to demonstrate confusion, poor record-keeping, and inadequate sexual-assault response protocols.

37. National reporting confirms USAFA's worsening sexual-assault climate: "Sexual assault rates at U.S. military service academies at highest rate on record" (CNN, March 10, 2023).

38. Colorado Public Radio reported: "20 years after a national scandal, the U.S. Air Force Academy is still dealing with rising sexual assault rates" (March 24, 2023).

39. The Colorado Springs Gazette reported: "Sexual assault reports at Air Force Academy highest in at least 16 years" (February 21, 2022).

40. In Spletstoser v. Hyten (9th Cir. Aug. 11, 2022), the court held: "We cannot fathom how the alleged sexual assault... could ever be an activity 'incident to military service' and the alleged sexual assault could not have conceivably served any military purpose," rejecting prior Feres-doctrine interpretations.

41. Two of 2d Lt Foster's roommates were sexually assaulted by different cadets during her time at USAFA, confirmed by OSI agents, USAFA Inspector General personnel, emails, and direct testimony published in Stars and Stripes (November 8, 2023).

42. USAFA failed to enforce a valid No-Contact Order against the upperclassman who raped Cadet Cailin Foster. He had multiple UCMJ reprimands, including at least one for underage drinking, and was on Aptitude, Conduct, Honor, and Academic probations (El Paso County Record, August 19, 2022).

43. The No-Contact Order covered all freshman females and specifically named Cadet Cailin Foster (El Paso County Record, August 19, 2022).

44. USAFA does not maintain permanent-party personnel in cadet dormitory areas after Taps until Reveille, contrary to the 2003 Agenda for Change requirement for 24/7 monitoring.

45. This failure enabled the violent sexual assault and rape of freshman Cadet Cailin Foster in her dormitory during non-duty hours (El Paso County Record, August 19, 2022).

46. Cadet Cailin Foster reported the rape to her Element Leader on May 31, 2018, and to at least four cadet friends. Plaintiffs possess the actual text message sent to the Element Leader.

47. Cadet Cailin Foster feared reporting the rape because she believed USAFA officials would take punitive action against her and her friends, demonstrating that confusion about amnesty protections persist twenty years after the policy was implemented (OSI Report).

48. A friend of Cadet Cailin Foster reported the rape to a USAFA Chaplain. The Chaplain actively discouraged the friend from reporting the assault (OSI Report, March 10, 2022), confirming the 2003 finding of inadequate Chaplain training.

49. The accused rapist was later disenrolled for academic failure and given an honorable discharge (El Paso County Record, August 19, 2022).

50. In April 2020, two cadets died within two days of each other (suspected suicides) on March 26 and March 28, 2020 (Public knowledge).

51. The second death was later discovered to be Cadet Cailin Foster's boyfriend.

52. USAFA responded: "The Disaster Mental Health Team was not formally activated following death of boyfriend."

53. Cadet Cailin Foster's boyfriend's parents contacted USAFA to report that Cadet Cailin Foster was sending suicidal messages to the deceased's Snapchat account (OSI Report, March 10, 2022).

54. Both of Cadet Cailin Foster's commanders were aware of these incidents but took no decisive action (OSI Report, March 10, 2022).

55. Cadet Foster also had to cope with the death of her favorite French teacher on September 9, 2019 (Public knowledge).

56. On October 8, 2020, Cadet First Class Cailin Foster (C1C/Senior) was injured during a physical-fitness test and was forced by the athletics department to complete it against her will. Form 18 medical documentation confirms the injury.

57. When C1C Cailin Foster protested, she was "blacklisted" from being a tennis manager after three years in the position (verified by various anonymous cadets).

58. Combined with the rape and multiple deaths, these events triggered suicidal ideations.

59. Immediately afterward, on October 8, 2020, C1C Cailin Foster's direct commander sent a Flash message directly to the Commandant of Cadets stating that C1C Cailin Foster was mentally struggling with the death of her boyfriend, triggered by the athletics department's punitive actions, and would need close supervision.

60. From Cadet Cailin Foster's Freshman year through to the end of her Senior year at USAFA, Cadet Cailin Foster received no professional mental-health care.

61. On April 1, 2021, USAFA medical personnel conducted only a cursory 15–30-minute telehealth intake despite receiving command warnings about Cadet Cailin Foster's unstable psychological state.

62. Cadet Cailin Foster's complete career mental-health record consists of this single one-page intake form. No other records exist, confirming her lack of professional care.

63. On April 1, 2021, Cadet Cailin Foster was placed on the Cadet At-Risk List ("CARL") for monitoring. No placement letter was ever produced.

64. Immediately before her scheduled psychiatric appointment on April 1, 2021, USAFA diverted her into a seven-day solitary COVID-19 quarantine from April 1–7, 2021 (OSI Report, March 10, 2022).

65. This diversion left her unmonitored and isolated during a period of acute psychological risk.

66. USAFA then failed to coordinate care or maintain continuity after her removal from the CARL.

67. USAFA personnel removed Cadet Cailin Foster from the CARL without authorization on April 5, 2021, while she was still in COVID-19 isolation (OSI Report, March 10, 2022).

68. Under USAFA policy, only Cadet Cailin Foster's commander could place or remove a cadet from the CARL.

69. Cadet Cailin Foster's commander denies ever removing her from the CARL, and no removal letter was ever produced (OSI Report, March 10, 2022).

70. USAFA blamed a decentralized CARL process for failures. When Plaintiff ran the program in 2003, the process was centralized. USAFA reverted back to pre-2003 Agenda for Change safeguards.

71. Unauthorized removal from the CARL caused medical and command staff to lose cognizance of Cadet Cailin Foster's deteriorating psychological condition.

72. As a direct result of these failures, Cadet Cailin Foster suffered catastrophic psychological trauma and major weight gain (approximately 30 pounds on a 5 ft 2-inch body frame).

73. USAFA unlawfully and routinely blocked a Command Directed Evaluation ("CDE") initiated by her commander (OSI Report, March 10, 2022).

74. Blocking the CDE violated Department of Defense Instruction (DoDI) 6490.04 and delayed critical medical intervention.

75. The USAFA Superintendent told Plaintiff: "A commander does not have to consult with anyone to direct a Mental Health evaluation."

76. The 2003 Agenda for Change specifically placed commanders on G-Series orders for the express purpose of being able to conduct CDEs. Plaintiff personally witnessed this policy implementation.

77. On March 10, 2023, Secretary of Defense Lloyd Austin directed onsite installation evaluations concerning sexual assaults to be conducted at military academies.

78. Plaintiffs learned of the impending investigation and sent a letter directly to the lead investigator and the same letter was also sent through Senator Joni Ernst's office for delivery requesting a meeting at USAFA to discuss sexual-assault issues. Plaintiffs never received a response.

79. The 2023 Military Service Academies On-Site Installation Evaluation Report identified Cadet Cailin Foster's freshman squadron as "High Risk" for sexual assault.

80. USAFA withheld critical safety information from Plaintiffs, who were her parents.

81. This withholding prevented Plaintiffs from intervening during their daughter's crisis.

82. USAFA refused to produce investigative findings requested through Inspector General (IG) channels.

83. The IG did not interview Plaintiffs regarding the facts of their submitted IG complaint.

84. When asked if the IG would be present at a meeting with the USAFA Superintendent and Commandant, the IG representative responded: "No, I am going on vacation."

85. USAFA failed to recognize cadet-specific barriers to seeking care, including career fears, stigma, escort requirements, lack of anonymity, and distrust of leadership—barriers documented across more than twenty years of references.

86. In May 2021, the Air Force assigned 2d Lt Cailin Foster to Wright-Patterson Air Force Base, Ohio, where her deceased boyfriend was buried, inflicting additional unnecessary psychological pain.

87. On July 29, 2021, 2d Lt Cailin Foster reported to Wright-Patterson AFB.

88. On August 24, 2021, she began classes at the University of Dayton.

89. On September 30, 2021, 2d Lt Cailin Foster, having lost weight and showing signs of recovery, took the Air Force fitness test. She failed. The Air Force refused to tell Plaintiffs by how much. After repeated inquiries, the Air Force finally admitted she failed by one point (OSI Agent).

90. On October 7, 2021, 2d Lt Cailin Foster met with her supervisor, Colonel Katherine Todorov, who "counseled" her for failing the fitness test and for "not supporting her (Colonel Todorov's) mission" by taking classes at the University of Dayton.

91. On October 10, 2021, 2d Lt Cailin Foster told Plaintiffs that Colonel Todorov was bullying her. She sent Colonel Todorov's biography to Plaintiff because her father believed the Colonel's actions were unusual and inappropriate for her rank and position.

92. On October 22, 2021, 2d Lt Cailin Foster met with Colonel Todorov again for another "counseling session."

93. On November 7, 2021, 2d Lt Cailin Foster took her life.

94. On November 8, 2021, 2d Lt Cailin Foster's former USAFA roommate informed Plaintiffs of her death from Mississippi. No one from 2d Lt Cailin Foster's official Air Force chain of command ever contacted Plaintiffs.

95. On August 7, 2022, Wright-Patterson AFB released results of its investigation into bullying allegations against Colonel Todorov. As expected, the Air Force exonerated Colonel Todorov in a 3.5-page summary letter.

96. On October 17, 2024, Plaintiffs received an email from Amy Foltz, GS-15, who worked with Colonel Todorov: "Hi Sir. My name is Amy Foltz and I am looking for Gary and Colleen Foster. I hope this is your number. I am sorry to reach out to you in this way but I am being harassed and bullied by my boss and I saw your news articles about your daughter (in 2024). My boss is Col Kate Todorov."

97. Ms. Foltz has multiple official Air Force complaints lodged against Colonel Todorov, with active investigations ongoing. She told Plaintiffs these events have negatively impacted her own mental and physical health.

98. USAFA and Wright-Patterson AFB engaged in post-death administrative misconduct, including withholding FOIA-responsive documents due within 21 days of filing. Plaintiffs are still waiting for official responses more than three years later.

99. Wright-Patterson AFB produced 159 totally blacked-out pages on October 6, 2022, concerning the investigation into Colonel Todorov, demonstrating malicious non-compliance with FOIA.

100. USAFA has refused to respond to FOIA requests in their entirety.

101. USAFA continues to demonstrate an overly restrictive interpretation of the Privacy Act and poor record-keeping, in direct conflict with the 2003 Agenda for Change.

102. These acts caused additional harm to Plaintiffs independent of their daughter's death.

103. If the Air Force denies these claims, it would effectively declare that no minimum standard of care is owed to service members facing sexual assault, rape, and mental-health malpractice. It would also declare that parents have no enforceable rights to information or accountability, and that systemic neglect may occur without recourse or impetus to improve.

104. Ultimately, 2d Lt Cailin Foster's death was preventable.

105. Due to a confluence of negligent actions taken by the United States Air Force, Plaintiffs respectfully submit this wrongful-death and medical-malpractice complaint.

106. As Lt Gen John Rosa, USAFA Superintendent during the 2003 Agenda for Change, stated: "One big challenge in introducing changes at the Academy is to make sure they are backed by lasting programs, so we don't find ourselves 10 years down the road in the same or similar circumstances."

107. Twenty years later, USAFA and the Air Force have not changed and demonstrate no underlying system or individual accountability to change due to the Feres Doctrine.

108. In her suicide note to her parents, 2d Lt Cailin Foster wrote: "Mommy, Daddy and Sissy, You couldn't have done anything to stop this. Do all that you can to make sure that I am the last one. Love you for all to eternity, Cailin."

109. Plaintiffs could not understand why their daughter, coming from a proud tradition of family service and attending service academies, would say: "You do not understand. The Academy does not care. They will let you down."

110. Plaintiffs now understand the reasons for her statement and respectfully request consideration, redress of grievances, and relief in this Complaint.

111. USAFA's systemic failures, including sexual-assault response breakdowns, mental-health care failures, record-keeping deficiencies, improper CARL removal, failure to activate disaster mental-health protocols, and command-level bullying, created a foreseeable and preventable chain of harm.

112. USAFA's failure to enforce sexual-assault safeguards directly contributed to Cadet Foster's rape, trauma, and long-term psychological deterioration.

113. USAFA's failure to provide adequate mental-health care, including failure to diagnose, monitor, or treat her acute suicidal risk, contributed to her worsening condition.

114. USAFA's unauthorized removal of Cadet Cailin Foster from the CARL deprived her of required monitoring and clinical oversight during a period of acute risk.

115. USAFA's diversion of Cadet Foster into solitary COVID-19 isolation immediately before her psychiatric appointment left her unmonitored and vulnerable.

116. USAFA's blocking of a Command Directed Evaluation ("CDE") violated DoDI 6490.04 and prevented timely intervention.

117. USAFA's withholding of critical safety information from Plaintiffs prevented them from intervening to protect their daughter, Cailin Renee Foster.

118. USAFA's refusal to produce investigative findings, failure to interview Plaintiffs, and IG misconduct further obstructed accountability and transparency.

119. Wright-Patterson AFB's refusal to disclose the margin of failure on her fitness test, and subsequent bullying by Colonel Todorov, exacerbated her psychological distress.

120. Wright-Patterson AFB's post-death administrative misconduct—including producing 159 fully redacted pages and failing to respond to FOIA requests—demonstrates malicious non-compliance and obstruction.

121. USAFA and Wright-Patterson AFB's combined failures created a foreseeable and preventable chain of events leading to 2d Lt Cailin Foster's death.

122. Potential blame shifting between command leadership and medical practitioners is not an excuse for negligent behavior.

123. Plaintiffs suffered additional independent harm due to the Air Force's withholding of information, FOIA violations, Privacy Act misinterpretations, and post-death administrative misconduct.

124. Plaintiffs respectfully submit this Complaint seeking redress for wrongful death, medical malpractice, and independent negligent infliction of emotional distress.

## VI. CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

### Wrongful Death (FTCA & C.R.S. § 13-21-201)

*(Parents and Estate)*

125. Plaintiffs incorporate paragraphs 1–124 as though fully set forth herein.
126. USAFA owed 2d Lt Cailin Foster mandatory duties of protection, monitoring, and clinical care.
127. USAFA breached these duties through systemic negligence, regulatory violations, and failures to enforce sexual-assault safeguards, provide adequate mental-health care, maintain proper record-keeping, and respond appropriately to known risks.
128. These breaches directly and foreseeably caused the wrongful death of 2d Lt Cailin Foster.
129. Under Colorado law, her surviving parents are exclusively entitled to wrongful-death damages pursuant to C.R.S. § 13-21-201.
130. Plaintiffs seek all damages available under Colorado wrongful-death law and the Federal Tort Claims Act.

## SECOND CLAIM FOR RELIEF

### Medical Malpractice / Clinical Negligence (FTCA)

*(Estate)*

131. Plaintiffs incorporate paragraphs 1–130 as though fully set forth herein.
132. USAFA clinicians owed 2d Lt Cailin Foster care consistent with professional medical standards, including proper diagnosis, monitoring, treatment, continuity of care, and crisis intervention.
133. Under Colorado law, medical-malpractice claims are governed by the Colorado Health Care Availability Act ("HCAA"), C.R.S. § 13-64-302, which establishes the applicable statute of limitations, damages caps, and substantive standards for medical negligence.
134. USAFA clinicians breached the standard of care by failing to diagnose, monitor, or treat her acute suicidal risk; failing to maintain continuity of care; failing to provide adequate mental-health evaluation; and failing to intervene despite clear command warnings.
135. USAFA personnel unlawfully blocked a Command Directed Evaluation ("CDE"), violating DoDI 6490.04 and delaying critical medical intervention (OSI Report).
136. USAFA personnel improperly removed Cadet Cailin Foster from the Cadet At-Risk List ("CARL") without authorization, depriving her of required monitoring and oversight (OSI Report).

137. USAFA diverted Cadet Cailin Foster into solitary COVID-19 isolation immediately before her psychiatric appointment, leaving her professionally unmonitored during a period of acute risk (OSI Report and anonymous Cadet testimony).

138. These failures directly caused 2d Lt Cailin Foster's pain, suffering, psychological deterioration, and death.

139. Plaintiffs seek all damages available under Colorado medical-malpractice law and the Federal Tort Claims Act.

## THIRD CLAIM FOR RELIEF

### Independent Negligent Infliction of Emotional Distress (NIED)

*(Parents)*

140. Plaintiffs incorporate paragraphs 1–139 as though fully set forth herein.

141. USAFA owed independent duties to notify and communicate with civilian parents during severe cadet crises, including when cadets exhibit suicidal ideations, experience sexual-assault trauma, or suffer significant psychological deterioration.

142. USAFA breached these duties by withholding critical safety information from Plaintiffs, including information about their daughter's rape, psychological deterioration, suicidal communications, CARL placement and removal, blocked mental-health evaluations, and command-level concerns.

143. USAFA and Wright-Patterson AFBs engaged in post-death administrative misconduct, including FOIA violations, refusal to provide investigative findings, production of fully redacted pages, and failure to respond to Plaintiffs' inquiries.

144. USAFA's actions foreseeably caused severe emotional distress to Plaintiffs, including physical manifestations of harm.

145. On March 14, 2024, Plaintiff suffered a stress-induced heart attack at age 55. As a result of this event, Plaintiff is now 100% disabled per the Veterans Administration.

146. Plaintiffs seek all damages available under Colorado law and the Federal Tort Claims Act for independent negligent infliction of emotional distress.

## VII. PRAYER FOR RELIEF

147. Plaintiffs respectfully request judgment in their favor and award the following relief:

a. **Full compensatory damages**, including economic and non-economic losses, for wrongful death, medical malpractice, and negligent infliction of emotional distress; b. **All damages available under Colorado law**, including those authorized by C.R.S. § 13-21-201 and the Colorado Health Care Availability Act; c. **Pre-judgment and post-judgment interest** as permitted by law; d. **Reasonable attorneys' fees and costs** as permitted under the Federal Tort Claims Act and applicable Colorado statutes; e. **Any other relief the Court deems just and proper** in light of the preventable death of 2d Lt Cailin Renee Foster and the independent harms suffered by Plaintiffs.

## VIII. SIGNATURES

Dated: July 11, 2026

148. /s/ **Gary W. Foster** 52 N. Sherwood Glen Monument, CO 80132 Plaintiff, Pro Se
149. /s/ **Colleen G. Foster** 52 N. Sherwood Glen Monument, CO 80132 Plaintiff, Pro Se
150. /s/ **Walter A. Munyer** 1922 Timber Haven Ct. Grove City, OH 43123 Personal Representative of the Estate, Pro Se