EXHIBIT COVER SHEET

EXHIBIT A – Amended FTCA Claim (SF 95 – 10/08/2024) and Denial letter (06/06/2025)

1. National Trial Law – Amended claim for the estate of Cailin Foster, AF Claims – 24-1209/2369/2373 (10/10/2024)
2. National Trial Law – Letter of Representation (RE Walter Munyer)
3. SF 95 (10/08/2024)
4. US Air Force Initial denial letter (06/06/2025)
5. National Trial Law – Withdrawal of Representation (07/16/2025)

EXHIBIT B - Filed Appeal (12/03/2025) and Final Denial letter (01/15/2026)

1. Request for Reconsideration of Gary and Colleen, Individually and OBO the Estate of Cailin Foster: 24-367485, 25-367486, and 25-367488 (12/03/2025)
2. US Air Force denial letter (01/15/2026)

EXHIBIT C – Walter Munyer Ohio Certificate of Appointment and Incumbency (12/13/2021)



NATIONAL TRIAL LAW

WHITEHURST
HARKNESS
BREES
CHENG
ALSAFFAR
HIGGINBOTHAM &
JACOB PLLC

LAURIE HIGGINBOTHAM
*Attorney*

lhigginbotham@nationaltriallaw.com
1114 Lost Creek Blvd. Ste 410
Austin, TX 78746
(512) 476-4346 (w)
(512) 476-4400 (f)

TEXAS ROOTS, NATIONAL REACH*

Thursday, October 10, 24
Via email and CMRRR # 7007 0710 0001 5895 3960

AF/JAC Medical Law Branch
Medical, Tort and Personal Property Law Division
1500 West Perimeter Road, Suite 1700
Joint Base Andrews, MD 20762

Re: Amended claim for the estate of Cailin Foster, AF Claims 24-1209/2369/2373

Dear Ms. Jolissaint:

On October 27, 2023, our office submitted a Federal Tort Claims Act (FTCA) claim and a Military Claims Act (MCA) claim against the Air Force for Colleen Foster and Gary Foster individually, and Gary Foster on behalf of the estate of Cailin Foster. The state of Ohio requires the administrator of an estate to be an Ohio resident. Since Mr. and Mrs. Foster reside in Colorado, they have agreed to amend their claim naming Walter Munyer as the representative of the estate for their daughter Cailin Foster.

I have enclosed an amended Letter of Representation, signed Form 95 for the estate claim, and the Letters of Authority from the Probate Court of Green County, Ohio. We have sent this letter by certified mail, return receipt requested (USPS tracking: **7007 0710 0001 5895 3960**). Please confirm your receipt of the Form 95 by returning a file-stamped copy of the Form 95 to our office.

EXHIBIT A

www.nationaltriallaw.com

We hope your investigation of Mr. and Mrs. Foster's claim is progressing smoothly and we look forward to hearing from you soon. Please do not hesitate to contact me with any questions.

Sincerely,

Laurie Higginbotham

LH/pp
/Enclosures

# NATIONAL TRIAL LAW®
### TEXAS ROOTS, NATIONAL REACH®

## LETTER OF REPRESENTATION

I have hired the law firm of Whitehurst, Harkness, Brees, Cheng, Alsaffar, Higginbotham, & Jacob PLLC ("National Trial Law"), of 1114 Lost Creek Blvd., Ste. 410, Austin, Texas 78746, to represent me as my attorneys for all injuries Cailin Foster had suffered on November 7, 2021, and any claims that may arise from those injuries. I appoint Michelle Cheng, Jamal Alsaffar, Laurie Higginbotham, Tom Jacob, Steven Haspel, and Chip Brees of National Trial Law to act as my authorized attorneys, agents, and legal representatives. National Trial Law may sign, modify, amend, or withdraw any claim, form, claim form, Form 95, agreement, complaints, petition, records requests, authorizations or any other document on my behalf that are related to the furtherance of my legal claims. National Trial Law and my attorneys may endorse all checks and drafts made payable to my order and collect the proceeds. I authorize National Trial Law to represent me in my individual capacity as well as any representative capacity I may have, including estates, minors, or incompetents that I may represent (as noted below).

_____
Signature of Walter Munyer on behalf of the estate of Cailin Foster

__10/09/2024_____
Date

www.nationaltriallaw.com

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit to Appropriate Federal Agency: | 2. Name, address of claimant, and claimant's personal representative if any. (See instructions on reverse). Number, Street, City, State and Zip code. |
|---|---|
| AFLOA/JACC 1500 W. Perimeter Rd., Suite 1700 Joint Base Andrews, MD 20762 | Walter Munyer on behalf of the Estate of Cailin Foster 1114 Lost Creek Blvd., Ste 410 Austin, TX 78746 ***REPRESENTED BY COUNSEL*** |

| 3. TYPE OF EMPLOYMENT ☒ MILITARY ☐ CIVILIAN | 4. DATE OF BIRTH 5/12/1999 | 5. MARITAL STATUS single | 6. DATE AND DAY OF ACCIDENT SEE ATTACHED | 7. TIME (A.M. OR P.M.) SEE ATTACHED |
|---|---|---|---|---|

**8. BASIS OF CLAIM** (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary).

SEE ATTACHED

**9. PROPERTY DAMAGE**

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

N/A

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF THE DAMAGE AND THE LOCATION OF WHERE THE PROPERTY MAY BE INSPECTED. (See instructions on reverse side).

**10. PERSONAL INJURY/WRONGFUL DEATH**

STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT.

SEE ATTACHED

**11. WITNESSES**

| NAME | ADDRESS (Number, Street, City, State, and Zip Code) |
|---|---|
| SEE ATTACHED | |

**12. (See instructions on reverse). AMOUNT OF CLAIM (in dollars)**

| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights). |
|---|---|---|---|
| | | $20,000,000.00 | $20,000,000.00 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side). | 13b. PHONE NUMBER OF PERSON SIGNING FORM 512-476-4346 | 14. DATE OF SIGNATURE 10/8/2024 |
|---|---|---|

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729). | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) |

Authorized for Local Reproduction
Previous Edition is not Usable
95-109

NSN 7540-00-634-4046

STANDARD FORM 95 (REV. 2/2007)
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2

## INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of the vehicle or property.

15. Do you carry accident insurance?  ☐ Yes   If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number.  ☐ No

16. Have you filed a claim with your insurance carrier in this instance, and if so, is it full coverage or deductible?  ☐ Yes  ☐ No   |   17. If deductible, state amount.

18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim? (It is necessary that you ascertain these facts).

19. Do you carry public liability and property damage insurance?  ☐ Yes   If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code).  ☐ No

## INSTRUCTIONS

**Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident. If the incident involves more than one claimant, each claimant should submit a separate claim form.**

**Complete all items - Insert the word NONE where applicable.**

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY

Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid. A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations. If more than one agency is involved, please state each agency.

The claim may be filled by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item number 12 of this form.

DAMAGES IN A SUM CERTAIN FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN TWO YEARS AFTER THE CLAIM ACCRUES.

The amount claimed should be substantiated by competent evidence as follows:

(a) In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of the injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

(b) In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

(c) In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

(d) Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
A. *Authority:* The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B. *Principal Purpose:* The information requested is to be used in evaluating claims.
C. *Routine Use:* See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D. *Effect of Failure to Respond:* Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid."

## PAPERWORK REDUCTION ACT NOTICE

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501. Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention: Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, DC 20530 or to the Office of Management and Budget. Do not mail completed form(s) to these addresses.

STANDARD FORM 95 REV. (2/2007) BACK

# CONTINUATION PAGE

*Claim for Damage, Injury, or Death*

## #2–NAME, ADDRESS OF CLAIMANTS AND CLAIMANTS PERSONAL REPRESENTATIVE, IF ANY:

> Laurie M. Higginbotham (Attorney for Claimants)
> Steven R. Haspel (Attorney for Claimants)
> Whitehurst, Harkness, Brees, Cheng,
> Alsaffar, Higginbotham, & Jacob PLLC
> 1114 Lost Creek Blvd., Ste. 410
> Austin, TX 78746
> Telephone: 512-476-4346
> Fax: 512-476-4400

## #6 & #7–DATE AND TIME OF INCIDENT:

This claim concerns the negligence of agents, servants, and employees of the United States to Cailin Foster at the United States Air Force Academy in Colorado Springs, Colorado beginning on or about 2017 – 2022.

## #8–BASIS OF CLAIM:

Cailin was a cadet at the United States Air Force Academy from 2017 to 2021. Sometime during her first year at the Academy, Cailin was sexually assaulted by a fellow airman named Morgan Harrison. During her time at the Academy following her sexual assault, her mental health began to decline. The Academy negligently failed to prevent the sexual assault by keeping Cailin reasonably safe from Harrison by properly monitoring the campus dormitory and timely removing Harrison after he exhibited concerning behavior, including but not limited to, concerning behavior toward Cailin and other female cadets. As a result of the Government's negligence, Cailin committed suicide just two months into her post at Wright-Patterson Air Force Base. She was 22 years old.

Cailin entered the Academy as a star student. She declined a full-tuition scholarship to the University of Alabama so that she could follow her dream of serving her country just like her father, Lt. Col. Gary Foster, Jr. Before attending the Academy, Cailin did not suffer from any mental health illnesses. Aside from her stellar academic achievement, Cailin's adolescence was largely unremarkable. As she

progressed through her training and education at the Academy, however, she developed serious, but treatable, mental health problems.

As freshman cadets in the Academy, Cailin and her classmates began their military careers in close quarters. Cadet Morgan Harrison, as early as August 2017, began displaying coercive, threatening, and nonconsensual advances towards multiple female cadets. Cadet Harrison was a sophomore at the Academy, so he had no business being around the female freshmen cadets in the first place. Investigative records note Harrison cornering a Cadet Polanosky, for example, during summer training in the Student Activity Room, refusing to let her leave.

Like Cadet Polanosky, Cailin was someone the Academy knew Cadet Harrison was targeting. In October 2017, multiple cadets reported Harrison standing in the entry of Cailin's dormitory quarters, blocking her from exiting. He then walked into her room, stood directly in front of her, and placed his fingers on Cailin's lips, rubbing them for some time while he licked his own lips. This was nonconsensual and was disturbing to the multiple people that witnessed it. A close friend of Cailin's, Cadet Williams, described the encounter as coercive and threatening. Cadet Williams also reports seeing Cadet Harrison staring into other female dorm rooms on prior occasions. Since this event was reported by multiple cadets, it apparently triggered some form of Academy investigation.

Cadet Harrison was also caught drinking near Arnold Hall. The Academy strictly regulates and prohibits the consumption of alcohol on school grounds. Or at least the Academy says it does. Cadet Harrison was issued a Letter of Reprimand by his commanding officers on or around November 1. By this point, Harrison had committed multiple infractions, multiple of which concern the inappropriate contact of female cadets. Nonetheless, Cadet Harrison was not issued a No Contact Order, not placed in quarters away from cadets he'd harassed, or otherwise restricted in any way from accessing freshmen female cadets at the Academy.

On or around October 5, Cadet Harrison met with the Squadron Cadet Review Board, presumably to discuss the investigation into his multiple coercive and nonconsensual advances on fellow female cadets. Investigative documents loosely reference certain "honor violations" that occurred.

Sometime between his disturbing advances on Cailin and the end of the fall semester in 2017, a group of cadets gathered in their dorm quarters and consumed alcohol. In accordance with Academy policy, there was supposed to be campus patrol monitoring dorm activity 24/7 to properly ensure cadets were adhering to the Academy's rules, especially those considering the underage consumption of alcohol. That monitoring apparently did not happen. Freshman

cadets drank alcohol at a dormitory party, and many got intoxicated. Both Cailin and Cadet Harrison attended this party. After Cailin had been drinking, Cadet Harrison offered to walk Cailin home.

Once back at Cailin's dorm, Cadet Harrison followed Cailin into her room and locked the door behind him. Cailin did not invite him into her room. He then threw Cailin onto her bed and forcibly raped her, ejaculating inside of her and leaving shortly thereafter. Though Cailin kept the details of the rape to her closest friends at first, an Air Force Chaplain knew about it from Cadet Williams. After hearing the details of this sexual assault, the Air Force chaplain of unknown African ethnicity who worked at the Cadet Chapel at Vandenberg Hall advised Cadet Williams against reporting the rape.

By spring 2018, Cadet Harrison was issued No Contact Orders for multiple individuals including Cailin. But it was far too late. The Academy had ample opportunity to protect female cadets like Cailin from Cadet Harrison but failed to timely intervene and keep its cadets safe. And worse, despite multiple honor violations and reports of sexual misconduct, the Academy merely encourages Cadet Harrison to voluntarily disenroll, which he did. Despite his history of sexual assault and harassment of multiple female cadets, Cadet Harrison received an honorable discharge.

As Cailin progressed through the Academy, multiple cadets described Cailin as "extremely depressed," in stark contrast to the Cailin they knew before the sexual assault. By 2020, she not only disclosed suicidal ideations with her classmates, but she actually attempted to kill herself. AFOSI investigative reports show that a classmate observed Cailin trying to hang herself at the Academy—the same way Cailin would take her life one year later. Thankfully, the cadet intervened and prevented Cailin from successfully committing suicide. AFOSI records also show that this attempt was reported, but the identity of the person who learned of this suicide attempt remains redacted.

Her severe mental health decline impacted her physical assessments too. In October, Cailin failed a physical assessment for the first time. Following documented shame and humiliation, she reiterated her suicidal ideations to a fellow cadet. This cadet informed Academy leadership by reporting Cailin's disturbing behavior to Lt. Col. Tydingco and MSgt. Czarnecki. Multiple cadets told Academy chain of command that Cailin "needed to go to mental health."

By this point, the Academy was acutely aware of Cailin's disturbing mental health status. Due to the slew of failures by the Academy, including its failure to prevent

the sexual assault, Cailin committed suicide on November 7, 2021. She was just 22 years old.

## #10—STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM:

Because of the negligence of the United States, Claimant, Walter Munyer, on behalf of the Estate of Cailin Foster, suffered the following damages, for which recovery is sought:

1. Past mental anguish, pain & suffering; and
2. All other damages available at law or in equity.

Lt. Col. Gary Foster, Jr., individually as father of Cailin Foster, has sustained damages and injuries including but not limited to:

1. Past and future loss of support & services;
2. Past and future loss of companionship and protection;
3. Past and future mental anguish, pain, & suffering; and
4. Funeral and burial expenses.

Colleen Foster, individually as mother of Cailin Foster, has sustained damages and injuries including but not limited to:

1. Past and future loss of support & services;
2. Past and future loss of companionship and protection;
3. Past and future mental anguish, pain, & suffering; and
4. Funeral and burial expenses.

## #11—WITNESSES

For the identity of witnesses to the incidents described in this claim and persons with knowledge of relevant facts, please refer to the medical and billing records of claimants, which set forth the identity of health care providers, record custodians, other personnel, and lay persons who are witnesses or potential witnesses in this case. Further, Claimants herein are identified as witnesses. Additional witnesses may be known as future discovery is obtained.



# DEPARTMENT OF THE AIR FORCE
## AIR FORCE JUDGE ADVOCATE GENERAL'S CORPS
### CIVIL LAW

JUN 0 6 2025

*- First denial letter*
*- Appealed on Dec 3, 2005*

Medical, Tort and Personnel Property Claims Division
1500 W. Perimeter Rd., Suite 1700
Joint Base Andrews, MD 20762

Laurie Higginbotham
Whitehurst, Harkness, Brees, Cheng, Alsaffar, Higginbotham & Jacob, PLLC
1114 Lost Creek Blvd., Ste 410
Austin, TX 78746

Re:  Your clients, Colleen and Gary Foster, individually and on behalf of the Estate of Cailin
     Foster; Air Force Claims: 25-367485, 25-367486 and 25-367488

Ms. Higginbotham,

First of all, please allow me to express my sorrow to your clients for the loss of their daughter, 2Lt Cailin Foster.  I cannot begin to imagine the pain they have experienced through this ordeal.  I am grateful for Lt Foster's dedication and service to our nation, and for your clients' desire to improve the Air Force culture for all current and future servicemen and servicewomen.

As to your client's claims, I have considered them under the provisions of the Federal Tort Claims Act (FTCA), 28 U.S.C. §§1346(b), 2671-2680.  After careful review, I regret that I must deny them.

Under Feres v. United States, 340 U.S. 135 (1950), the United States is not liable for servicemembers' injuries or death that arose out of activities incident to their military service. The 10th Circuit has given a broad reach to Feres in cases where the injuries were "at least remotely related to his military service." Pringle v. U.S., 208 F.3d 1220 (10th Cir. 2000); See Gonzalez v. U.S., 88 Fed. Appx. 371 (10th Cir. 2004)(servicemember's claim that failure to protect her from sexual assault barred is by Feres).

This is the final denial of your clients' claims.  If they are dissatisfied with this decision, they may now file suit in an appropriate United States District Court not later than six months after the date of mailing of this letter.

Sincerely,

BRADFORD S. HUNT
Chief, General Torts Branch
Claims and Tort Litigation Division



**NATIONAL TRIAL LAW**

WHITEHURST
HARKNESS
BREES
CHENG
ALSAFFAR
HIGGINBOTHAM &
JACOB PLLC

T E X A S   R O O T S ,   N A T I O N A L   R E A C H ®

STEVEN HASPEL
*Attorney*

shaspel@nationaltriallaw.com

1114 Lost Creek Blvd., Ste 410
Austin, TX 78746
W: (512) 476-4346
F: (512) 476-4400

July 16, 2025
Via CMRRR #9589071052700988856092

Bradford S. Hunt
Department of the Air Force
Medical, Tort and Personnel Property Claims Division
1500 W. Perimeter Rd., Suite 1700
Joint Base Andrews, MD 20762

      Re: FTCA Claims of Gary Foster and Colleen Foster, Individually and OBO the Estate of Cailin Foster: 25-367485, 25-367486, 25-367488

Dear Mr. Hunt:

We received the Air Force's denial letter dated June 6, 2025, for the FTCA claims of Gary Foster and Colleen Foster, Individually and OBO the Estate of Cailin Foster.

We have withdrawn our representation for Mr. and Mrs. Foster and provided them with a copy of the Air Force's denial letter. Below you will find their contact information. Please direct all future correspondence to:

Gary and Colleen Foster
52 N. Sherwood Glen
Monument, CO 80132

Gary Foster
719-360-5775
gwfoster1@juno.com

Colleen Foster
719-360-5222
foster_4family@yahoo.com

Thank you for your attention to this matter and please do not hesitate to contact me if you have any questions.

Sincerely,

Steven Haspel

AF/JAC Medical Law Branch                                December 03, 2025
Medical, Tort and Personal Property Law Division
Attn: Bradford S. Hunt
1500 West Perimeter Road, Suite 1700
Joint Base Andrews, MD 20762


      Re: Request for Reconsideration of Gary Foster and Colleen Foster, Individually and
OBO the Estate of Cailin Foster: 25-367485, 25-367486, and 25-367488


Dear Mr. Hunt:

We received a copy of your denial letter dated June 6, 2025, in the above referenced FTCA
claims. In response, please consider this letter a formal appeal and request for reconsideration of
your decision in accordance with 28 U.S.C. § 2401(b), 28 C.F.R. 14.2, and 28 C.F.R. 14.9(b).

Reconsideration is warranted because the denial (1) improperly applied the *Feres* doctrine, (2)
ignored substantial new evidence unavailable to the Fosters at the time of the initial filing,
(Senator Bennet's (CO) office is currently working with SAF/LL to finally obtain FOIA and IG
submitted complaint information) and (3) failed to consider overwhelming proof of USAFA's
long-standing leadership, safety, sexual-assault, and mental-health failures—failures originally
identified in the 2003 *Agenda for Change* and repeatedly ignored.

The record now makes clear that USAFA's misconduct was **systemic, predictable, preventable**,
and wholly outside any legitimate "incident of service."

For these reasons, the Air Force's denial should be vacated and the claims reopened for full
reconsideration

---

# I. The Air Force Improperly Applied the *Feres* Doctrine

The Air Force's denial relies solely on *Feres* and an outdated, expansive description of "incident
to service," while ignoring controlling principles, modern case law, and the extraordinary facts of
this case.

## A. Sexual Assault Is Not "Incident to Service"

The USAFA sexual assaults that shaped—and ultimately destroyed—Cailin's mental well-being
are not military activities, nor connected to service.

EXHIBIT B

**1. Cailin was sexually assaulted, raped by an upper-class cadet subject to a no-contact order.**

- She and two of her roommates endured three sexual assaults, committed by three different male cadets at different points in their cadet careers. No wonder Cailin had no faith in USAFA being able to protect her.
- As a 5'2", 100-lb freshman Cailin was a prime target.
- She reported rape to:

  - her Element Leader (first in chain of command),
  - at least four cadet friends,
  - and feared retaliation from upper-class leadership.

- Her assailant—already on Academic, Aptitude, Conduct, and Honor probation—had:

  - two UCMJ Letters of Reprimand,
  - an active no-contact order listing Cailin and other freshman females by name,
  - and a known history of using power/control against female under-class cadets.

- USAFA leadership also failed to enforce the no-contact order and left Cailin's assailer unsupervised.

These failures violate federal sexual-assault policy, Air Force directives, and USAFA's own mandatory accountability requirements.

**2. The Ninth Circuit's decision in *Spletstoser v. Hyten* forecloses the denial's reasoning.**

*"We cannot fathom how the alleged sexual assault could ever be considered an activity incident to service."*
— *Spletstoser v. Hyten*, 44 F.4th 938 (9th Cir. 2022)

The Air Force provided no legal authority contradicting *Spletstoser*, nor any reason why rape at a service academy—permitted by leadership failures—is a military function.

## B. The FTCA claim includes harms to parents not arising from service

Under *Romero v. United States*, 954 F.3d 126 (2d Cir. 2020), post-assault misconduct, negligent misrepresentation, and failure to notify families are independent torts not barred by *Feres*.

The Fosters suffered multiple independent harms, including:

- false statements and omissions after Cailin's death,
- withholding of material safety information,

- failure to disclose no-contact violations,
- failure to provide required investigative findings.

## C. Violations of mandatory regulations are not "incident to service"

USAFA violated:

- DoDI 6490.04 (Command-Directed Mental Health Evaluations),
- CARL administration rules,
- sexual-assault reporting requirements,
- the 2003 *Agenda for Change* directives,
- mandatory 24/7 cadet supervision policies,
- recordkeeping requirements.

Feres does not protect illegal, non-discretionary, or prohibited conduct.

---

# II. Newly Obtained Evidence Requires Reconsideration

The Fosters did not have access to critical information at the time of the original FTCA claim. Much of this evidence was suppressed, ignored under FOIA, or never produced despite repeated requests. Note: Senator Bennet's (CO) office is currently working with SAF/LL to finally obtain FOIA and IG submitted complaint information.

## A. The 2023 Military Service Academies On-Site Installation Evaluation Report

This DOD report—obtained only after FTCA claims submission — shows:

### 1. USAFA has systemic, pervasive sexual harassment and assault problems

- 60% of women and 19% of men experienced sexual harassment in a single year.
- USAFA had the highest number of sexual-assault reports in at least 16 years.
- Squadron 7—Cailin's squadron—was identified as one of the most dangerous units on campus, with high assault risk. As a freshman, she was essentially trapped in a known hostile and dangerous environment.

### 2. Cadets feared reporting due to retaliation and harmful leadership

The report documents:

- "unhealthy leadership dynamics,"

- lack of transparency,
- fear of retribution,
- hazing, bullying, and
- distrust of reporting mechanisms.

These conditions directly match Cailin's own statements to her parents:
*"You do not understand. The Academy doesn't care. They will let you down."*

### 3. Mental health stigma and lack of access to care

The report confirms problems identical to what Cailin experienced:

- Cadets feared career harm if they sought mental-health care.
- Mental-health access was limited; transportation was unreliable.
- TAC/AOC support was inconsistent or unavailable.

## B. Discovered Cadet At Risk List (CARL) –Mental Health failures

The Fosters learned:

- Cailin was placed on the CARL after being forcibly required to complete a physical fitness test while injured. Medical personnel validated the injury.
- The Commandant of Cadets (O7) was aware of Cailin's struggles through a flash message but took no action.
- She was removed from the CARL without commander approval, and USAFA refuses to identify who removed her.
- She received only a 15–30 minute telehealth intake call—no documented in-person counseling.
- When she attempted to report for her first in-person appointment, she was diverted into seven days of COVID isolation, left alone.
- Upon release, Mental Health lost cognizance of her because she had been improperly removed from the CARL.

USAFA has refused to produce:

- CARL logs,
- command communications,
- CDE request records,
- mental-health documentation. (The one-page intake record was just recently obtained.)

## C. Command-directed evaluations were repeatedly requested—and blocked

OSI records confirm:

Foster 4 of 7

- Her first-line commander attempted multiple times to initiate a Command-Directed Evaluation (CDE).
- USAFA Command Leadership and base legal blocked the CDE, asserting she must "voluntarily" report—contrary to DoD policy.
- Direct Commanders do not require "approval" to direct an evaluation; USAFA's actions are indefensible.

# III. The Circumstances Surrounding Lt. Foster's Death Are Not Barred by *Feres*

## A. USAFA violated mandatory safety, sexual-assault, and mental-health policies

The failures include:

- Non-enforcement of a no-contact order naming Cailin directly
- Lack of supervision of a disenrolling cadet with known misconduct
- Failure to activate the Disaster Mental Health Team after two cadet suicides
- Chaplain discouraging reporting of sexual assault
- IG non-involvement and refusal to provide answers to parental submissions
- False or incomplete responses to FOIA and investigative inquiries
- Leadership permitting predatory behavior by upper-class cadets
- Systemic recordkeeping failures mirroring 2003 findings

These are failures of leadership, policy compliance, and institutional duty of care—not military operations.

## B. USAFA's failures mirror the 2003 Agenda for Change findings

The same deficiencies identified 20 years ago persist:

- Commander confusion about mental-health evaluations even though these commanders were placed on G-Series (command authority) orders
- Lack of 24/7 dormitory supervision
- Inadequate sexual-assault reporting
- Poor recordkeeping
- Lack of chaplain training
- Improper handling of CARL
- Failure to enforce alcohol prohibitions
- Persistent retaliation fears

Lt Gen John Rosa (Superintendent during the 2003 Agenda For Change) said one big challenge in introducing changes at the academy is to make sure they are backed up by lasting programs, *"so that we don't find ourselves 10 years down the road in the same or similar circumstances."*

- Regretfully, twenty years later, USAFA is back.

# IV. Request for Relief

For the foregoing reasons, the Fosters respectfully request that the Air Force:

1. **Reconsider the June 6, 2025 denial.**
2. **Reopen and reconsider the claims** in light of new evidence.
3. **Produce all improperly withheld documents**, including FOIA-responsive material, IG-related files, CARL logs, CDE request history, mental-health records, and USAFA internal communications.
4. **Apply the correct legal standards**, including *Spletstoser*, *Romero*, and the limits on *Feres* in cases of sexual assault and independent parental harms.
5. **Issue a written redetermination** addressing the complete factual record.

# Conclusion

Cailin Foster's death was not the result of military activity, discipline, or combat risk.
It was the foreseeable outcome of:

- sexual-assault failures,
- ignored safety warnings,
- unlawful mental-health practices,
- suppressed reporting,
- broken leadership systems,
- and violations of every principle in the *Agenda for Change*.

The FTCA denial was issued under an incomplete record, a misapplication of the *Feres* doctrine, and without the benefit of newly uncovered evidence establishing pervasive, long-known failures at USAFA. The Fosters respectfully request full reconsideration so their daughter's death can be evaluated under the law and on the merits—rather than through an over-broad application of a doctrine increasingly rejected by courts and Congress.

Please notify us in writing of your receipt of this request for reconsideration so that we may calculate the new administrative investigation period. Please let us know when you have assigned a lawyer to this case and if there is any other information that would help your review.

I look forward to hearing from you soon.

Respectfully,

Dr. Gary W. Foster, Lt Col (r), USAF, and Mrs. Colleen Foster
52 N Sherwood Glen
Monument CO 80132
gwfoster1@juno.com / foster_4family@yahoo.com
719 360 5775 / 5222

Walter A. Munyer
For the Estate of Cailin Renee Foster
1922 Timber Haven Ct.
Grove City, OH 43123
wmunyer@protonmail.com

CC: Senator Michael Bennet (CO)



# DEPARTMENT OF THE AIR FORCE
## OFFICE OF THE JUDGE ADVOCATE GENERAL
### CIVIL LAW AND LITIGATION

JAN 1 5 2026

Medical, Tort and Personnel Property Claims Division
1500 W. Perimeter Rd., Suite 1700
Joint Base Andrews, MD 20762

Dr. Gary Foster and Mrs. Colleen Foster
52 N Sherman Glen
Monument, CO 80132

      Re: Dr. Gary Foster and Mrs. Colleen Foster, individually, and on behalf of the Estate of Cailin Foster; Air Force Claims: 25-367485, 25-367486 and 25-367488

Dr. Foster and Mrs. Foster,

Allow me to again express my sincere condolences to you for the loss of your daughter. I cannot begin to imagine the pain you have endured these past years. I remain grateful for your family's service to our nation and your desire to improve Air Force culture for all current and future servicemen and servicewomen.

I have reconsidered your claims under the provisions of the Federal Tort Claims Act (FTCA), 28 U.S.C. §§1346(b), 2671-2680. Upon careful review of your request for reconsideration, I regret that I must again deny them.

Notwithstanding the points you raised in your letter, I must apply the law from the 10th Federal Circuit. The 10th Circuit has given a broad reach to Feres in cases where the injuries were "at least remotely related to his military service." Pringle v. U.S., 208 F.3d 1220 (10th Cir. 2000). In a very similar case, the 10th Circuit found that the Feres doctrine applied to allegations that a servicemember was sexually assaulted by a fellow servicemember on base. See Gonzalez v. U.S., 88 Fed. Appx. 371 (10th Cir. 2004).

This is the final denial of your claims. If you are dissatisfied with this decision, you may now file suit in an appropriate United States District Court not later than six months after the date of mailing of this letter.

Sincerely,

BRADFORD S. HUNT
Chief, General Torts Branch
Claims and Tort Litigation Division

cc:
Walter A. Munyer, Administrator
Estate of Cailin Foster
1922 Timber Haven Ct
Grove City, OH 43123

**FILED**
GREENE COUNTY, OHIO

DEC 1 3 2021

# PROBATE COURT OF GREENE COUNTY, OHIO
## THOMAS M. O'DIAM, JUDGE

THOMAS M. O'DIAM
JUDGE PROBATE DIVISION
COURT OF COMMON PLEAS

**ESTATE OF** CAILIN RENEE FOSTER _____, **DECEASED**

**CASE NO.** 47749E _____

# ENTRY APPOINTING FIDUCIARY; LETTERS OF AUTHORITY

### [For Executors and all Administrators]

Name and Title of Fiduciary WALTER A. MUNYER, ADMINISTRATOR _____

On hearing in open court the application of the above fiduciary for authority to administer decedent's estate, the court finds that:

Decedent died **[check one of the following]** ☐ testate ☑ intestate on NOVEMBER 7, 2021 _____ domiciled in FAIRBORN, GREENE COUNTY, OHIO _____.

**[Check one of the following]** ☐ Bond is dispensed with by the will ☒ Bond is dispensed with by _Judgment Entry_ ☐ Applicant has executed and filed an appropriate bond, which is approved by the court; and

Applicant is a suitable and competent person to execute the trust.

The court therefore appoints applicant as such fiduciary, with the power conferred by law to fully administer decedent's estate. This entry of appointment constitutes the fiduciary's letters of authority.

December 13, 2021 _____

Date

_____
Thomas M. O'Diam, Probate Judge

# CERTIFICATE OF APPOINTMENT AND INCUMBENCY

The above document is a true copy of the original kept by me as custodian of this Court. It constitutes the appointment and letters of authority of the named fiduciary, who is qualified and acting in such capacity.

Thomas M. O'Diam, Probate Judge

By: _Brandy N. Fite_
Deputy Clerk

_December 14, 2021_
Date

(Seal)

FORM 4.5 - ENTRY APPOINTING FIDUCIARY; LETTERS OF AUTHORITY

7/1/77

EXHIBIT C